```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                        PARKERSBURG
```

**JEFFERY DEAN MULINEX,**

    **Plaintiff,**

v.                                    CASE NO. 6:09-cv-0772

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are briefs in support of judgment on the pleadings.

Plaintiff, Jeffery Dean Mulinex (hereinafter referred to as "Claimant"), filed an application for DIB on October 2, 2007, alleging disability as of September 7, 2007, due to neck and back problems.  (Tr. at 11, 83-85, 118-125, 141-46, 148-52.)  The claim was denied initially and upon reconsideration.  (Tr. at 11, 42-46, 47-49.)  On January 2, 2008, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 51.)  The hearing was

held on October 3, 2008, before the Honorable Harry C. Taylor, II. (Tr. at 60-73, 18-33.) By decision dated November 25, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-17.) The ALJ's decision became the final decision of the Commissioner on May 4, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) On July 6, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment

meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of status post anterior cervical

3

discectomy and fusion with ongoing neck pain. (Tr. at 13-14.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14.) The ALJ then found that Claimant has a residual functional capacity to perform the full range of light work. (Tr. at 14-15.) As a result, Claimant cannot return to his past relevant work. (Tr. at 16.) Nevertheless, the ALJ concluded that based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.18 and Rule 202.11. Claimant could perform jobs which exist in significant numbers in the national economy. (Tr. at 16.) On this basis, benefits were denied. (Tr. at 16-17.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 50 years old at the time of the administrative hearing. (Tr. at 21.) He has a tenth grade high school education. (Tr. at 22.) In the past, he worked as a forklift operator and a warehouse operator. (Tr. at 23, 168.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

Records from Camden Clark Memorial Hospital indicate Claimant had services dated September 19, 1998 to April 27, 1999 following a work-related neck injury on June 17, 1998. The records deal with Claimant's anterior cervical discectomy with fusion, which was performed on January 14, 1999 by Rammy Gold, M.D., his follow-up care and physical therapy. (Tr. at 245-372, 365-72.)

On January 28, 2001, a "WV EMS Prehospital Care Record" states

Claimant was "involved in altercation. P Hx [patient history]: cervical disc fusion. Con [conscious] and alert. Able to ambulate to police vehicle prior to our arrival. No external bleeding. No obvious deformity. Patient refuses further evaluation or transport to E/R. Patient left with friend and county officers." (Tr. at 364.)

On January 28, 2001, Claimant was admitted to Camden Clark Memorial Hospital due to "lumbar spine pain." (Tr. at 363.)

On January 30, 2001, Claimant sought treatment at Camden Clark Memorial Hospital due to "back pain, neck pain" following an "MC Other/No Fault" accident on January 26, 2001. (Tr. at 355-60.) Kevin Burner, M.D. stated that x-rays of the cervical spine and thoracic spine revealed: "Mild T12 anterior compression deformity with mild degenerative changes of the end plates." (Tr. at 361-62.)

On February 13, 2001, Claimant again sought treatment at Camden Clark Memorial Hospital due to "severe upper lumbar pain" following a January 26, 2001 "auto accident." (Tr. at 351.) Kenneth Miller, M.D. stated that an MRI of the lumbar spine revealed "1. Moderate compression fracture of T12 with displacement into the canal with approximately 25 percent compromise of the canal. 2. Tethered cord with the caudal aspect of the cord at the L4/5 level." (Tr. at 353-54.)

On March 13, 2001, Claimant sought treatment at Camden Clark Memorial Hospital due to pain related to a "T12 compression

fracture." (Tr. at 348.)  The form indicates "auto accident" and "02/23/01." (Id.)

Claimant underwent treatment at Mountaineer Pain Relief and Rehabilitation Center from January 31, 2001 to December 17, 2001, for a moderate compression fracture of T12, thoracic and lumbar strain.  (Tr. at 231-44.) Claimant completed a full course of physical therapy (three times a week for four weeks) and was discharged on May 18, 2001.  (Tr. at 240-42.) The December 17, 2001 outpatient reevaluation of Toby Foster, MSN, CFNP, and Michael Shramowiat, M.D. states:

> Mr. Mulinex presents today for follow-up of chronic mid and low back pain. He is reporting only occasional discomfort, as pointed to, approximately T12-L1.  He continues full-time employment at Gatewood Products.  His present position requires frequent heavy lifting.  He is not presently taking NSAIDs, muscle relaxants, or analgesics.
>
> PHYSICAL EXAMINATION: Gait is grossly normal.  Lumbar range of motion: Grossly within normal limits for flexion, extension, left and right lateral bends, and left and right rotation.  Bilateral lower extremity strength is 5/5.  Sensation grossly intact and symmetrical for light touch in both lower extremities. Deep tendon reflexes 2+ at the patella and Achilles bilaterally.  Straight leg raises negative in both lower extremities.  Patient has mild right lower thoracic paraspinal tightness.
>
> TREATMENT PLAN: 1.  Perform exercises as instructed per PT [physical therapy].
>
> RETURN: Patient is to report increased signs or symptoms. Otherwise, return to clinic in six months for follow-up.

(Tr. at 239.)

On August 12, 2003, Claimant twisted his left ankle at work

7

and sought treatment at Camden Clark Memorial Hospital. (Tr. at 336-48.) Terry C. Shank, M.D., reviewed an x-ray of the left foot and concluded: "Examination of the left foot fails to reveal a fracture or definite abnormality. Cartilaginous joint spaces appear essentially normal." (Tr. at 347.)

On April 30, 2006, Claimant filed a Workers' Compensation Commission Employees' and Physicians' Report of Injury stating in response to the question "How did injury occur?": "Working bag line, stacking 50 lb. bags pulled or strained back." (Tr. at 168.)

Records indicate Claimant received twenty-five chiropractic back treatments at Johnson Chiropractic Care from May 2, 2006 to September 18, 2006. (Tr. at 159-68.)

On September 18, 2006, Michael Johnson, D.C., wrote a note "To Whom It May Concern: Jeffery Mullenix [sic] has been under my care since 9/11/06 and will be able to return to work on 10/22/06. *20 lbs. restriction." (Tr. at 157.)

On October 25, 2006, Michael Johnson, D.C., wrote a note "To Whom It May Concern: Jeffery Mullinex [sic] has been under my care since 5/2/06 and will be able to return to work full duty on 10/26/06." (Tr. at 156.)

On June 15, 2007, Claimant was treated at Ohio Valley Medical Quickare, Inc. for a "pulled muscle in neck. DOI [date of injury] 6-13-07...been lifting heavy metal baskets." (Tr. at 169.) P. Burke, M.D. diagnosed a cervical sprain and prescribed Skelaxin and

Naprosyn [sic].  (Tr. at 170.)

On August 23, 2007, Claimant sought treatment at Camden Clark Memorial Hospital for cervical neuropathy.  (Tr. at 333-35.)  W. M. Hensley, M.D., reported that Claimant had undergone a MRI cervical cord and spine with contrast:

> Status post C6-C7 discectomy and fusion with marked disc degeneration changes at C5/6, where the large and broad posterior spur with accompany disc cause moderate to severe central canal stenosis.  Additional small midline disc protrusion at C3-C4 and moderate sized midline disc protrusion at C4-C5 are seen.
>
> Pt. [patient] needs to contact Dr. Gold today to be seen ASAP [as soon as possible].  If symptoms worsen before appt. [appointment] recommend evaluation in the ER [emergency room].

(Tr. at 176, 335.)

On September 6, 2007, Heidi D. Rusk, MS, PA-C [physician's assistant-certified] for Rammy Gold, M.D., wrote to Robert B. Dushkoff, M.D. thanking him for his referral of Claimant for neurosurgical consultation.  She stated:

> Mr. Mulinex has previously undergone an anterior cervical discectomy and fusion [at C6-C7] performed by Dr. Gold in 1998.  He had excellent relief of his symptoms with that surgery...
>
> MRI of the cervical spine from Camden-Clark Memorial Hospital on 08/23/07 was reviewed.  This study demonstrates significant disc disease at the levels of C4-C5 and C5-C6 above the level of the previous surgery.  There was cord compression at both of these levels.  In addition, plain films obtained at today's visit show no significant instability in the spine, and the previous surgical hardware remains in good positioning.
>
> At this time, we have explained the findings of our examination with Mr. Mulinex and his wife.  As Dr. Gold

> has discussed, given the severity of the cord compression
> and signs of myelopathy, we strongly recommend cervical
> surgery soon... Since he has previously undergone an
> anterior cervical discectomy and fusion, we need for him
> to be evaluated by an ears, nose, and throat specialist
> for a vocal cord evaluation. We will arrange this as
> soon as possible.

(Tr. at 172-73.)

On September 6, 2007, Dr. Gold reported that he had reviewed Claimant's most recent and past AP and lateral cervical spine films. (Tr. at 177-84.) Regarding the most recent films, he stated:

> An anterior cervical fusion has been performed at C6-C7.
> He has a good bony fusion and a dark plate replaced.
> There is severe disc degeneration at C5-C6 and to a
> lesser degree at C4-C5. Alignment is notable for a
> straightening of the normal cervical curve. No acute
> changes are identified.

(Tr. at 177.)

On September 9, 2007, Gregory E. Krause, M.D. reported to Dr. Gold that he had seen Claimant per Dr. Gold's request for consultation. He stated:

> On physical examination of the head and neck the tympanic
> membranes were intact bilaterally and there was no middle
> ear fluid. There was no oral cavity or oropharyngeal
> lesions and there is no significant cervical
> lymphadenopathy. Nasal septum is midline without
> significant nasal drainage. Flexible laryngoscopy was
> performed and revealed normal vocal cord movement, no
> posterior laryngeal inflammation and no hypopharyngeal or
> laryngeal masses. My presumptive diagnosis is normal
> vocal cord movement.

(Tr. at 171.)

On September 17, 2007, Dr. Gold performed an anterior cervical discectomy with fusion at C4-5, C5-6 on Claimant at Camden Clark

Memorial Hospital. (Tr. at 204-22.)  Claimant was discharged on September 18, 2007 with this discharge summary by Dr. Gold:

> The patient is a 49-year-old gentleman with intractable neck pain and arm pain.  He was admitted for surgical treatment. He tolerated the procedure well.  He remained neurologically normal in the perioperative period.  He was eating a regular diet and was maintained on po narcotics.  He was discharged to home with instructions to do no lifting greater than ten pounds and to do no strenuous activity.  He was given prescriptions for Percocet and Skelaxin.  His condition on discharge was improved.

(Tr. at 205.)

On December 20, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work without postural, manipulative, visual, communicative, or environmental limitations.  (Tr. at 129-37.)  The evaluator, Celesta Sanders, noted: "Claimant alleges neck and back pain.  He is s/p anterior cervical discectomy and fusion. FU [follow up] visit notes some pain, but full ROM [range of motion] and normal gait.  Duration denial thru Sept. 2008, one year post op. [operation] to light."  (Tr. at 134.)

On April 30, 2008, Cindy Osborne, D.O. reported that she had "reviewed all the pertinent medical evidence in file and assessment of 12/20/07 is affirmed as written."  (Tr. at 228.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to order a consultative examination.  (Pl.'s Br. at 2-5.)

11

The Commissioner argues that the ALJ's findings are supported by substantial evidence and that no error was committed when a consultative examination was not ordered because the record was fully developed. (Def.'s Br. at 6-12.)

<u>Duty to Refer Claimant for a Consultative Examination</u>

Claimant asserts that the ALJ erred when he failed to order a consultative examination. Specifically, Claimant argues:

> The claimant was never sent out for a consultative examination. The claimant's attorney pointed this out to the ALJ during the hearing (Transcript pg. 32). The ALJ did not fulfill his duty to develop and send the claimant out for a physical or mental examination... The ALJ mentioned that the claimant does not have health insurance, and did not have a way to get treatment, however he then finds there is not enough evidence to find a continuous 12-month period, contradicting the ruling in *Newell* and violating his duty to develop.

(Pl.'s Br. at 3-5.)

The Commissioner responds that Claimant's assertion has no merit because the ALJ sufficiently developed the record in finding that Claimant was not disabled under the act. Specifically, the Commissioner argues:

> Plaintiff ignores the fact that it was his burden to prove that he had severe physical impairments that rendered him disabled. 20 C.F.R. § 404.1512(a), (c). Although an ALJ has a duty to develop the record fully and fairly, he is not required to act as Claimant's counsel... Plaintiff has the burden of establishing a prima facie entitlement to benefits...
>
> The pertinent inquiry is whether the record contained sufficient medical evidence for the ALJ to make an informed decision as to Plaintiff's alleged physical impairment... In the instant case, the evidence of record was fully developed for the ALJ to make a disability

> determination. The medical records, along with Plaintiff's treatment history, Plaintiff's testimony, Plaintiff's work activities, and the record as a whole support the conclusion that Plaintiff was not disabled within the meaning of the Act...
>
> Significantly, the ALJ did not penalize Plaintiff for not being able to afford treatments, but simply found that during the relevant time period the Plaintiff sought or required minimal treatment and had used minimal medications....The duty to develop does not require consultative examinations or testing at the government expense unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision... Further, Plaintiff makes no showing that any further evidence would call for a different decision.

(Def.'s Br. at 7-11.)

In the decision, the ALJ concluded Claimant had the residual functional capacity to perform the full range of light work. In so finding, the ALJ articulated his views as to Claimant's testimony, his medically determinable impairment, and the medical evidence of record:

> The claimant testified to extreme symptoms and limitations, especially pain such that he is unable to walk one-half mile or stand for greater than 30 minutes. The claimant testified that he has constant pain in his neck, which radiates into his shoulder, arm and back. His pain causes him difficulty in walking, sitting and lifting. He is unable to lift 20 pounds repetitively. He takes no medication except for over-the-counter Aleve and Tylenol. He underwent physical therapy after his first surgery, but he was unable to do so after his second surgery due to lack of health insurance. He uses no brace or TENS unit. When he returned to work, riding on the forklift jarred his back. His hobby is collection NASCAR pictures. He spends his days lying with an icepack on his back. He seemed to have good results from his recent surgery, but his condition progressively worsened after the surgery. He has no funds to pay for medical treatment.

> The evidence does not support such extreme allegations. The record indicates the claimant returned to work only three and one-half months after undergoing surgery. There is no evidence of treatment since October 17, 2007, at which time the claimant was instructed to lift no greater than 10 pounds for six weeks (Exhibit 3F). Although the claimant alleges severe pain, there is no evidence of emergency room visits and the claimant testified he takes only over-the-counter medication.
>
> As to the effectiveness of treatment, the claimant has not undergone treatment since October 2007 while he alleges such significant problems that it would be expected there would be intensification of treatment. Although it is noted the claimant testified he has no health insurance to obtain medical treatment, there is no objective evidence to substantiate the alleged severity of the claimant's symptoms for a continuous 12-month period. Furthermore, the claimant testified that he takes only over-the-counter pain medications.
>
> As to side effects of medication, there are none established which would interfere with work activity.
>
> As to the claimant's activities of daily living, he greatly minimized them but there is no basis for this in the record.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. at 14-15.)

Regarding the ALJ's duty to refer a claimant for a consultative examination, 20 C.F.R. §§ 404.1517 and 416.917 (2006) provide that

> [i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are

>     disabled or blind, we may ask you to have one
>     or more physical or mental examinations or
>     tests.

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. § 404.1512(a) (2006). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment. Id. § 404.1512(c). In Bowen v. Yuckert, the Supreme Court noted:

>     The severity regulation does not change the
>     settled allocation of burdens of proof in
>     disability proceedings. It is true . . . that
>     the Secretary bears the burden of proof at
>     step five . . . [b]ut the Secretary is
>     required to bear this burden only if the
>     sequential evaluation process proceeds to the
>     fifth step. The claimant first must bear the

> burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary. . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel.  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  Claimant bears the burden of establishing a prima facie entitlement to benefits.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, Claimant "bears the risk of non-persuasion."  Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

The undersigned finds that the ALJ properly evaluated the claim and was not delinquent in any duty to refer a claimant for a consultative examination per 20 C.F.R. §§ 404.1517 and 416.917 (2006).  It is noted that the regulation provides that an ALJ "may" ask for a physical or mental examination if there is not sufficient medical evidence about the impairment to determine whether a disability exists.  Here, the ALJ did not err in finding there was sufficient medical evidence to determine that Claimant was not under a disability as defined in the Social Security Act.  It is

clear from the decision that the ALJ considered the entire record, including Claimant's testimony regarding his medical treatment, medications, activities of daily living, school records, and work record. (Tr. at 14-16.)

The record shows Claimant takes no medication except for over-the counter Aleve and Tylenol, uses no brace or TENS unit, and has not undergone treatment since October 2007. (Tr. at 15.) As for the opinion evidence, it is noted that Claimant's treating physician, Michael Johnson, is a chiropractor and that chiropractors are not acceptable medical sources. Still, the ALJ generously considered Dr. Johnson's records and found his "opinions are consistent with the evidence of record." (Tr. at 15.) Dr. Johnson stated that Claimant is limited to lifting twenty pounds and could return to work on October 2, 2006. (Tr. at 157.)

It is further noted that on December 20, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work without postural, manipulative, visual, communicative, or environmental limitations. (Tr. at 129-37.) The evaluator, Celesta Sanders, noted that while Claimant alleged neck and back pain, follow up visit notes revealed that Claimant had full range of motion and a normal gait. (Tr. at 134.) On April 30, 2008, Cindy Osborne, D.O. reported that she had reviewed all the medical evidence and affirmed the findings in the December 20, 2007

17

assessment. (Tr. at 228.)

As previously noted, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. § 404.1512(a) (2006). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment. Id. § 404.1512(c). Claimant bears the burden of establishing a prima facie entitlement to benefits. It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made,

and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

  May 25, 2010
     Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge